UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ANTHONY LEONARD, | ) |
|     Petitioner, | ) ) ) |
| v. | )   No. 4:12-CV-1590-JCH |
| JEFF NORMAN, | ) ) ) |
|     Respondent. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Anthony Leonard's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. (Petition, ECF No. 4). The Petition has been fully briefed and is ready for disposition.

On May 21, 2008, Leonard was convicted by a jury on three counts: (1) first-degree robbery; (2) armed criminal action; and (3) first-degree burglary. He was sentenced on the first count to 18 years imprisonment, on the second to 10 years imprisonment, and on the third to 15 years imprisonment. (Petition at 1; State Response, ECF No. 7, at 1). Those terms were ordered to run concurrently. (State Response at 1). Leonard's conviction was upheld on direct appeal in the Missouri Court of Appeals. (Direct Appeal Order, Resp. Exh. 5). Leonard was then denied post-conviction relief under Missouri Supreme Court Rule 29.15. (Rule 29.15 Order, Resp. Exh. 9).

Leonard raises fourteen claims in this Petition:

1. That the trial court erred in granting the State's motion to strike Juror Selvin Bell for cause.

2. That the trial court erred in admitting three prison photographs of Leonard.

3. That the trial court erred in denying Leonard's motion for a mistrial.

1

4. That the trial court erred in denying Leonard's motion to strike Juror Robert Bray for cause.

5. That the trial court erred in overruling Leonard's objection to the hearsay testimony of witness Otis Woodard.

6. That the trial court erred in denying Leonard's motion for judgment of acquittal at the close of evidence.

7. That the State failed to turn over a "911 tape" in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

8. That the trial court erred in allowing a second instance of hearsay testimony.

9. That Leonard's trial counsel was ineffective for failing to call certain witnesses.

10. That Leonard's trial counsel was ineffective for failing to call Leonard's boss, Jim Petty, who would have provided an alibi.

11. That Leonard's appellate attorney was ineffective for failing to raise all the claims contained in Leonard's motion for a new trial.

12. That Leonard's appellate attorney was ineffective for failing to submit to the Court of Appeals the photographs Leonard claims were erroneously admitted into evidence.

13. That Leonard's post-conviction counsel was ineffective for failing to claim ineffective assistance of appellate counsel based Leonard's appellate attorney's failure to submit those photographs.

14. That Leonard's post-conviction counsel was ineffective in failing to raise several claims before the motion court.

(Petition at 6, 7, 9, 11, 11(a), 11(b), 11(c), 11(d), 11(f), 11(g), 11(h), 11(i)). Leonard properly presented only a few of these claims to the state courts.

I. **Procedural Default**

"A section 2254 applicant's failure to raise a claim in state post-conviction proceedings results in procedural default of that claim." *Lyons v. Luebbers*, 403 F.3d 585, 593 (8th Cir. 2005); *see also Skillicorn v. Luebbers*, 475 F.3d 965, 976 (8th Cir. 2007) ("Claims that have not been presented to the state courts, and for which there are no remaining state remedies, are

2

procedurally defaulted."). "To avoid defaulting on a claim, a petitioner seeking habeas review must have fairly presented the substance of the claim to the state courts, thereby affording such courts a fair opportunity to apply controlling legal principles to the facts bearing upon [the] claim . . . ." *Wemark v. Iowa*, 322 F.3d 1018, 1020-21 (8th Cir. 2003) (alteration in original) (internal quotations and citations omitted). "A claim has been fairly presented when a petitioner has properly raised the same factual grounds and legal theories in the state courts which he is attempting to raise in his federal habeas petition." *Id.* at 1021 (internal quotations omitted).

A habeas petitioner nevertheless may have the merits of his claim examined if he can show cause for the failure properly to present his claims to the state courts and resulting prejudice. "Cause must be 'something *external* to the petitioner, something that cannot fairly be attributed to him.'" *Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012) (quoting *Coleman v. Thompson*, 501 U.S. 722, 753 (1991)).

Leonard raised Claims 4 through 8 in a motion for new trial. (State File, Resp. Exh. 2, at 69-74). He failed, however, to raise any of those claims on direct appeal, which means they have been procedurally defaulted. *Welch v. Lund*, 616 F.3d 756, 758 (8th Cir. 2010) ("A failure to exhaust remedies properly in accordance with state procedure results in procedural default of the prisoner's claims."). Leonard presents an indirect argument to excuse his default through Claim 11: that his appellate counsel was ineffective for failing to raise these arguments on direct appeal. But in order for ineffective assistance of appellate counsel to serve as cause to excuse a procedural default, a petitioner must have "first presented this argument 'as an independent Sixth Amendment claim to the state courts, if a forum existed to make the argument.'" *Whitmill v. Armontrout*, 42 F.3d 1154, 1157 (8th Cir. 1994) (quoting *McKinnon v. Lockhart*, 921 F.2d 830, 832 (8th Cir. 1990)). Leonard did not present his ineffective assistance of appellate counsel claim

to the state courts, nor, for the reasons discussed below, has he adequately contended that his post-conviction counsel's ineffectiveness can serve as cause for the failure to raise his ineffective assistance of appellate counsel claims. There is therefore no basis on which the Court can review the merits of Claims 4 through 8, and they must be dismissed.

Leonard failed entirely to present Claims 9 through 14 to the state courts. As with Claims 4 through 8, he has indirectly presented an argument that there is cause for his default on Claims 9 through 12, each of which is a claim for ineffective assistance of counsel. In Claims 13 and 14, Leonard claims his post-conviction counsel was ineffective for failing to raise in state court the ineffective assistance claims raised here in Claims 9 through 12. Claims 13 and 14 cannot serve as an independent basis for relief. 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."). The Supreme Court has held, however, that where ineffective assistance of counsel must be raised initially in a state post-conviction proceeding, as is the case under Missouri's Rule 29.15, ineffective assistance at that stage can serve as cause that excuses default. *Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012). One way a petitioner can show cause under this theory is by demonstrating that "appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.E.2d 674 (1984)." *Id.* at 1318. The petitioner must further show that the underlying ineffective assistance of counsel claim "has some merit." *Id.*

To demonstrate that he received ineffective assistance of counsel, a claimant must show that his attorney's performance was "deficient," and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To demonstrate counsel's

4

deficiency, the claimant must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. To demonstrate prejudice, the claimant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Thus, to show cause that excuses his default, Leonard must demonstrate that his post-conviction counsel was ineffective under this standard and that there is some merit to the underlying claim that his trial and appellate counsel were ineffective.

In Claim 13, Leonard contends his post-conviction counsel was ineffective in failing to argue that Leonard's appellate counsel was ineffective in failing to present physical copies of prison photographs of Leonard to the Missouri Court of Appeals. (Petition at 11(h)). Leonard objected to the admission of these photographs at trial, appealed the overruling of that objection, and believes the outcome of the appeal would have been different had the court of appeals been presented with the photographs. *Id.* In Claim 14, Leonard maintains that his post-conviction counsel was ineffective for failing "to bring up all movants [sic] claims" that could have been presented. *Id.* at 11(i).

The argument underlying Claim 14 is too vague to demonstrate that Leonard's post-conviction counsel's ineffectiveness excuses his procedural default. He presents only a cursory indication of which claims his post-conviction counsel should have raised and no specific facts that could indicate whether those claims would have had any merit. Without some indication of the merits of those claims or whether they would have had an impact on the outcome of the post-conviction court's decision, it is impossible to say whether Leonard's post-conviction counsel was ineffective under *Strickland*.

While Claim 13 is more specific, it also must fail. In deciding Leonard's direct appeal, the Missouri Court of Appeals acknowledged that it did not have copies of the photographs but also made clear that this fact did not impact its decision. (Direct Appeal Order at 7).[1] The failure to submit the photographs could therefore not be said to have prejudiced Leonard. Moreover, Leonard's post-conviction counsel cannot be considered deficient for failing to raise an ineffective assistance claim based on an action by Leonard's appellate counsel that the Missouri Court of Appeals stated would have had no impact on the outcome of the case. The argument in Claim 13 thus provides no basis on which the Court can excuse Leonard's default on Claims 9 through 12. Those claims, in addition to the freestanding claims of ineffective assistance of post-conviction counsel in Claims 13 and 14, therefore must be dismissed. This leaves only Claims 1 through 3 for decision on the merits.

## II.     Claim 1

In his first Claim, Leonard contends the trial court erred in granting the State's motion to strike for cause Juror Number 1212, Mr. Selvin Bell. (Petition at 6). Leonard presented this claim on direct appeal, and the Missouri Court of Appeals held as follows:

> For his first point on appeal, [Leonard] alleges the trial court denied him due process when it sustained the State's motion to strike venireperson Bell for cause. [Leonard] complains that the court excused a qualified juror. He maintains defense counsel sufficiently rehabilitated Mr. Bell and showed the court that Mr. Bell was competent and capable of properly weighing the evidence. Further, [Leonard] argues that even though Mr. Bell had stated he could not convict on the basis of one person's testimony, there was "merely a bare possibility of prejudice" because the State presented multiple witnesses.
>
> The key question presented here is whether the jury was impartial. The defendant is entitled to an impartial jury. *State v. George*, 921 S.W.2d 638, 646 (Mo. App. S.D.1996). The defendant has no right to any particular

---

[1] This portion of the Court of Appeals' decision is set forth below in the section dealing with Leonard's claim that he is entitled to habeas on the ground that the trial court committed constitutional error by admitting these photographs into evidence.

> juror. *Id.*; *see also State v. Blunk*, 860 S.W.2d 819, 821 (Mo. App. E.D. 1993); *State v. Turner*, 810 S.W.2d 92, 94 (Mo. App. E.D. 1991). When a defendant claims error in the striking of a juror, the defendant is not entitled to relief unless he can show that the jury empanelled was not impartial. *State v. Becton*, 841 S.W.2d 315, 319 (Mo. App. E.D. 1992). We will not reverse the trial court's ruling unless the defendant demonstrates the selected jury was not composed of competent, qualified and unbiased jurors. *State v. Williams*, 807 S.W.2d 200, 202 (Mo. App. E.D. 1991). As long as the jury that actually sits is impartial, the defendant may not complain of error. *State v. Abbott*, 845 S.W.2d 708, 709 (Mo. App. W.D. 1993); *see also State v. Jones*, 749 S.W.2d 356, 360 (Mo. 1988) (noting general rule that error may not be predicated on the sustaining of a challenge for cause if a full panel of qualified jurors is tendered for peremptory challenges).
>
> [Leonard] complains solely about the strike of venireperson Bell. He does not assert, much less demonstrate, that the jury chosen was not fair and impartial. As long as a full panel of jurors is tendered for peremptory challenges, the requirements of due process have been met. *George*, 921 S.W.2d at 646; *Blunk*, 860 S.W.2d at 821. [Leonard] makes no claim that this was not the case. In sum, [Leonard] failed to show the jury panel, as finally selected, was not composed of competent, qualified, unbiased jurors. His claim, then, must fail. [Leonard] has failed to show how the trial court's ruling excluding venireperson Bell for cause prejudiced him. Reversal, therefore, is not required. *George*, 921 S.W.2d at 646; *Turner*, 810 S.W.2d at 94. We deny this point.

(Direct Appeal Order at 2-3).

The standards for legal review of a state prisoner's federal habeas claim are set forth in 28 U.S.C. § 2254. Under that statute:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . .

28 U.S.C. § 2254(d). Under the "contrary to" theory, a district court must conclude "that the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of

7

law." *Yang v. Roy*, 743 F.3d 622, 625-26 (8th Cir. 2014). Under the "unreasonable application" theory, a district court must conclude that although the state court has identified the correct legal principles, the state court's application of those principles is objectively unreasonable. *Id.*

As the Missouri Court of Appeals pointed out, although without citing Supreme Court precedent, criminal defendants have a constitutional right to a fair and impartial jury. U.S. Const. amend. VI; *Duncan v. Louisiana*, 391 U.S. 145 (1968). "[T]he Constitution presupposes that a jury selected from a fair cross section of the community is impartial, regardless of the mix of individual viewpoints actually represented on the jury, so long as the jurors can conscientiously and properly carry out their sworn duty to apply the law to the facts of the particular case." *Ross v. Oklahoma*, 487 U.S. 81, 86 (1988) (alteration in original) (quoting *Lockhart v. McCree*, 476 U.S. 162, 184 (1986)); *see also Rivera v. Illinois*, 556 U.S. 148, 157-59 (2009). Any challenge to the jury's impartiality generally must focus "on the jurors who ultimately sat." *Id.*

The Missouri Court of Appeals' application of these principles was not unreasonable. Leonard's only argument was that a juror who did not sit was qualified. Nowhere does Leonard challenge the qualifications of the juror who ultimately replaced Mr. Bell or of any of the other jurors who convicted him. Absent some argument that the striking of Mr. Bell, putting aside whether that determination was correct, resulted in a trial by an unfair or partial jury, Leonard's first Claim must fail.

**III.    Claim 2**

In Claim 2, Leonard contends he is entitled to habeas relief because the trial court erred in admitting into evidence three photographs of him in prison clothes. (Petition at 7). This Claim was raised as Leonard's third point on direct appeal. The Missouri Court of Appeals found:

> For his final point on appeal, [Leonard] alleges the trial court erred in admitting into evidence State's Exhibits 4, 5, and 6, photographs of his

8

torso and arms. He contends the photographs were unfairly prejudicial because they showed him dressed in jail-issued orange jumpsuit pants, inside the city justice center. He argues that showing the jury such photographs is no different than compelling a defendant to stand trial in prison clothes – a practice the United States Supreme Court found impermissible in *Estelle v. Williams*, 425 U.S. 501 (1976). [Leonard] maintains the prejudicial impact of the photographs "likely" led the juror [sic] to improperly determine that, because he was already in custody, he was guilty of the charged offenses.

[Leonard] did not favor this Court with copies of the complained-of photographs. In effect, he asks us to assume the photographs depict him in distinctly identifiable prison clothes. This we cannot do. Nevertheless, as [Leonard] recognizes, the trial court has broad discretion to admit or exclude evidence at trial. *State v. Johnson*, 244 S.W.3d 144, 161 (Mo. banc 2008); *State v. Snowden*, 285 S.W.3d 810, 815 (Mo. App. S.D. 2009). This Court will not overturn the trial court's ruling unless the trial court has clearly abused its discretion. *Id.* Moreover, on direct appeal, we review claims of trial-court error for prejudice, not mere error. *State v. McLaughlin*, 265 S.W.3d 257, 262 (Mo. banc 2008). We will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial. *Id.* Trial-court error is not prejudicial unless there is a reasonable probability that the error affected the outcome of the trial. *State v. Zink*, 181 S.W.3d 66, 73 (Mo. banc 2005).

"Photographs are admissible if probative of any material fact." *State v. Wilhite*, 858 S.W.2d 293, 295 (Mo. App. E.D. 1993). "Photographs as evidence may be admitted in order to corroborate or refute testimony, as well as to assist the jury in better understanding testimony." *Snowden*, 285 S.W.3d at 816. [Leonard] acknowledges the photographs were probative to show the scarred tattoo on his forearm and the scarring on his back. His claimed prejudice, that the photographs "likely" led the jury to base their decision on an improper basis, is inherently speculative. [Leonard] has not demonstrated a reasonable probability that the trial court's ruling, even if in error, affected the outcome of the trial. We deny this point.

(Direct Appeal Order at 6-7).

Habeas relief under § 2254 is only available for violations of federal law. Rulings by state courts on state law matters, such as evidentiary rulings, are therefore not generally a basis for habeas relief. *Turner v. Armontrout*, 845 F.2d 165, 169 (8th Cir. 1988). In order to prevail on such a claim, the state law violation must be an error of constitutional dimension. *Estelle v.*

*McGuire*, 502 U.S. 62, 67-68 (1991). "A state court's evidentiary rulings can form the basis for habeas relief under the due process clause only when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process." *Osborne v. Purkett*, 411 F.3d 911, 917 (8th Cir. 2005) (quoting *Parker v. Bowersox*, 94 F.3d 458, 460 (8th Cir. 1996)).

While the Eighth Circuit "has recognized the potentially prejudicial effect of exposing a jury to mugshots[,]" *Futrell v. Wyrick*, 716 F.2d 1207, 1208 (8th Cir. 1983) (*per curiam*), nothing in federal law as clearly established by the Supreme Court indicates that admission of mug shots or similar photographs is inherently a due process violation. Nor does anything in this case bring the admission of the photographs of Leonard to that level. The purpose of the photographs, as noted by the Missouri Court of Appeals, was to show certain identifying marks on Leonard's body. Leonard may be correct that these marks could have been shown in other ways, but it is not for a federal court on habeas review to overturn the admission of relevant evidence because it was arguably more prejudicial than probative. More than arguable prejudice is needed to demonstrate that the photographs fatally infected the trial. The Missouri Court of Appeals therefore reasonably applied due process principles in upholding the admission of the photographs, and Leonard's second Claim must fail.

Leonard's attempt to compare his situation with *Estelle v. Williams*, 425 U.S. 501 (1976) cannot save his claim. In *Williams*, the Supreme Court found constitutional error where a defendant was forced to stand trial in prison garb. *Id.* at 512-13. The Court held that the constant appearance of the defendant in prison clothing had the potential to undermine the presumption of innocence. *Id.* at 504-05. There are at least two problems with comparing *Williams* to the facts here. First, briefly showing photographs of Leonard in prison attire is facially dissimilar from

forcing a defendant to appear before the jury in prison clothing throughout the entire trial, which makes relief under the "contrary to" theory impossible. Second, as the Supreme Court noted in deciding whether the constitutional error in *Williams* could serve as grounds for reversal, "[n]o prejudice can result from seeing that which is already known." *Id.* at 507 (quoting *United States ex rel. Stahl v. Henderson*, 472 F.2d 556, 557 (5th Cir. 1973). Leonard was standing trial. Any reasonable juror would, upon reflection, realize this meant that at some point Leonard had been taken into police custody. Thus, the photograph of Leonard in police custody could not have prejudiced Leonard. The comparison to *Williams* therefore is unavailing.

## IV. Claim 3

In the final point on which the Court may examine the merits, Claim 3, Leonard contends he is entitled to habeas relief because the trial court erred in not granting him a mistrial. (Petition at 10). Leonard raised this as his second point on direct appeal. The Missouri Court of Appeals explained the basis on which Leonard believed he was entitled to a mistrial and found as follows:

> For his second point on appeal, [Leonard] alleges the trial court erred in denying his motion for a mistrial, made when the court returned the jury to deliberate after determining, upon polling the jury, that the verdict was not unanimous. In essence, [Leonard] argues that the ultimate verdict was a product of judicial coercion. He contends that because the split was 11-1, and everyone knew the identity of the dissenting juror, "the very nature of the situation" rendered it coercive toward that juror.
>
> A mistrial is a drastic remedy that should be granted only in those extraordinary circumstances in which the prejudice to the defendant cannot otherwise be removed. *State v. Ward*, 242 S.W.3d 698, 704 (Mo. banc 2008). The decision to grant or deny a mistrial is left to the sound discretion of the trial court because it is in the best position to determine the prejudicial effect, if any, of the incident precipitating the request. *Id.* This Court reviews the trial court's refusal to declare a mistrial only for an abuse of discretion. *Id.*
>
> [Leonard] correctly asserts that a jury's verdict must not be reached through coercive means. "A coerced verdict does not represent a true unanimous concurrence of the jury." *State v. Conway*, 740 S.W.2d 320, 323

11

(Mo. App. E.D. 1987). "Coercion of a guilty verdict constitutes error." *State v. Burns*, 808 S.W.2d 1, 3 (Mo. App. E.D. 1991). "The rights of both parties to a fair trial and defendant's rights to due process cannot be served if a verdict is coerced, nor can these rights be protected if it is conceivable the verdict was coerced." *Id.* Determination of whether a verdict is a product of coercion is made by evaluating the totality of the circumstances. *See State v. Mason*, 588 S.W.2d 731, 734 (Mo. App. E.D. 1979). "A verdict can only be considered coerced when it appears, under the totality of the circumstances, that the trial court was virtually mandating a guilty verdict." *State v. McGinness*, 215 S.W.3d 322, 326 (Mo. App. E.D. 2007).

The totality of the circumstances here does not suggest coercion. The trial court sent the jury back for further deliberations as permitted by Rule 29.01(d). The trial court did not question the juror or otherwise focus undue attention on the dissenting juror. *See Conway*, 740 S.W.2d at 324 (finding trial court's repeated questioning of juror coercive). The trial court did not impose a time limit on the jurors' deliberations. *Compare Goudeau v. State*, 152 S.W.3d 411, 417 (Mo. App. S.D. 2005 [sic] (finding no coercion; noting trial court did not set time limits upon the jury's deliberations) *with Mason*, 588 S.W.2d at 734 (finding trial court's imposition of a fifteen-minute time limit, and the court's virtual directive that a verdict be reached, coercive). In no way did the trial court indicate that it would hold the jury until a verdict was reached. *See State v. McNail*, 767 S.W.2d 84, 87 (Mo. App. E.D. 1989) (finding coercion where the trial court had virtually directed that a verdict be reached and implied it would hold the jury until a verdict was reached). The trial court did not give the "hammer" instruction. The trial court never told the jurors they had to return a verdict. *Compare Burns*, 808 S.W.2d at 3 (finding coercion where the trial court told the jurors they had to reach a verdict on each count) *with State v. Barnett*, 16 S.W.3d 699, 705 (Mo. App. S.D. 2000) (finding no coercion where the trial court did not give a hammer instruction and did not tell jurors they had to return a verdict, but merely asked the jurors to continue deliberations). In no way can it be said that the trial court virtually mandated a guilty verdict. *See McNail*, 767 S.W.2d at 86-7; *Mason*, 588 S.W.2d at 734. Rather, after a sidebar conference with the attorneys after polling was complete, the trial court simply asked the jurors to return to the jury room and continue their deliberations and instructed them to "buzz" again "*if*" they reached a unanimous verdict. (Emphasis supplied).

[Leonard] argues that because everyone knew the identity of the dissenting juror, that juror was subject to "extreme" pressure to change her vote and, further, that she was not free to exercise her convictions, when as foreperson she had been instructed to continue deliberating. [Leonard's] argument is speculative. We note the jury deliberated for another hour before returning with a verdict. *Compare State v. Smith*, 431 S.W.2d 74, 86 (Mo. 1968) (finding no coercion where trial court informed split was 8-4 on

> issue of guilt, trial court gave hammer instruction, and jury returned one hour and thirty-five minutes later with a guilty verdict) *with State v. Cummings*, 612 S.W.2d 807, 811 (Mo. App. E.D. 1981 [sic] (finding coercion where trial court was informed split was 9-3 in favor of conviction, court gave hammer instruction, and jury returned ten minutes later with guilty verdict). Equally as speculative is [Leonard's] claim that the jury did not understand the instruction regarding the requirement of a unanimous verdict.
>
> Again, a mistrial is a drastic remedy, reserved for extraordinary circumstances. We find no such circumstances here. "The fact that a verdict was reached does not tend to establish coercion." *Smith*, 431 S.W.2d at 86. The court returned the jury for continued deliberations. We have no reason to believe the verdict was reached for any other reason. Therefore, we find no abuse of discretion on the part of the trial court in denying the defendant's motion for a mistrial. We deny this point.

(Direct Appeal Order at 3-6).

The Supreme Court has recognized that "[a]ny criminal defendant . . . being tried by a jury is entitled to the uncoerced verdict of that body." *Lowenfield v. Phelps*, 484 U.S. 231, 241 (1988). "The clearly established law relevant to this case is sparse." *Wong v. Smith*, 131 S. Ct. 10, 11 (2010) (Alito, J. dissenting). But an examination of *Lowenfield* itself is instructive here.

*Lowenfield* dealt with jury deliberations in a capital sentencing hearing that followed the guilt phase of the proceedings. *Lowenfield*, 484 U.S. at 234. During the afternoon of the first day of deliberations, a note from the jury room asked the court to reinstruct the jury as to their duties. *Id.* The sentencing court then called the jurors and polled each juror as to whether "further deliberations would be helpful in obtaining a verdict." *Id.* After an eight-to-four result in the affirmative, the court called the jurors back into the courtroom for reinstruction. *Id.* At that time, the jury indicated that some of the jurors had misunderstood the polling question. *Id.* The court therefore conducted the same poll a second time, this time with an 11-to-1 result in the affirmative. *Id.* at 234-35. The sentencing court then gave the jurors an *Allen* charge, the name of which is derived from *Allen v. United States*, 164 U.S. 492 (1896). The *Allen* charge given in

13

*Lowenfield* admonished each juror to honestly consider the views of his fellow jurors and allow himself to be persuaded if he felt he could do so in good conscience. *See id.* at 549 (quoting the instruction given by the sentencing court).

The *Lowenfield* court held that the determination of whether a jury verdict is coerced must take into account "all the circumstances." *Id.* at 237 (quoting *Jenkins v. United States*, 380 U.S. 445. 446 (1965) (*per curiam*)). The court focused on three factors: (1) the nature of the instruction given; (2) the potential coercive effect of giving that instruction on the heels of a jury poll; and (3) the length of time the jury spent deliberating. *Id.* at 237-40. The court noted that the type of instruction given in that case was indisputably acceptable. *Id.* at 237-38. It also noted that a mere half hour of deliberation could be an indication of coercion. *Id.* at 240. The second factor gave the Court the most pause. *See id.* at 239-240.

The court's discussion of the second factor centered on *Brasfield v. United States*, 272 U.S. 448 (1926). The trial court in *Brasfield* "had, after deliberations stalled, inquired as to how the jury was divided, and was informed simply that the jury stood nine to three." *Lowenfield*, 484 U.S. at 239 (citing *Brasfield*, 272 U.S. at 450). The *Brasfield* court came to the conclusion "that the inquiry into the jury's numerical division necessitated reversal because it was generally coercive . . . ." *Id.* The *Lowenfield* court distinguished *Brasfield* in two ways. First, it noted that *Brasfield* inquired into how the jurors "stood on the merits of the verdict," rather than how many thought further deliberations would be useful. *Id.* Second, it noted that *Brasfield* was decided as an exercise of the Supreme Court's "supervisory powers . . . ." *Id.* The court explained the significance of this in a footnote, in which it observed that its "decision in *Brasfield* makes no mention of the Due Process Clause or any other constitutional provision. The Federal Courts of

Appeals have uniformly rejected the notion that *Brasfield's per se* reversal approach must be followed when reviewing state proceedings on habeas corpus." *Id.* at 240 n. 3.

Factors one and three indicate less coercion than in *Lowenfield*. The court did not give an *Allen* charge.[2] Instead, it simply asked the jurors "to return to the jury room and continue your deliberations. And if the jury reaches a unanimous verdict, please buzz again and I'll have the jury come back down." (Trial Tr., Resp. Exh. 1, at 449). The jurors then deliberated for a full hour, which was more than the half hour of further deliberations in *Lowenfield*. Comparison of the second factor, however, is favorable to Leonard. Not only did the court's polling of the jury focus on the merits of the jury's verdict, it made known to the other jurors which juror had reservations about the outcome. This undoubtedly created a danger of coercion similar to that found in *Brasfield*.

The Missouri Court of Appeals also took into account several other factors not mentioned in *Lowenfield*. It noted that the court did not place a time limit on the jury's deliberations, did not indicate that it would hold the jury until it reached a verdict, and did not use language to indicate that it was requiring the jury to reach a verdict. *Id.* Each of these factors serves to mitigate the coerciveness of the circumstances surrounding the verdict.

Taking all of this into account, Leonard's Claim 3 must fail. As the *Lowenfield* court noted, *Brasfield* was decided based on the Supreme Court's supervisory powers over federal trial courts rather than on a constitutional violation. The Missouri Court of Appeals' decision therefore cannot be said to be contrary to Supreme Court precedent. Moreover, the Missouri Court of Appeals, based on the discussion above, did not unreasonably apply the totality of the

---

[2] In Missouri, an *Allen* charge is referred to as the "hammer" instruction. The Missouri Court of Appeals made clear, and the trial transcript corroborates, that this instruction was not given.

circumstances test required by *Lowenfield*. Claim 3 of Leonard's Petition must therefore be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Anthony Leonard's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, (ECF No. 4), is **DENIED**, and his claims are **DISMISSED** with prejudice. A separate Order of Dismissal will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that because Leonard cannot make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997).

Dated this 2nd Day of June, 2015.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE